IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL YOUNG, individually and on behalf of other similarly situated employees, <br><br> Plaintiff, <br><br> v. <br><br> GRANITE CONSTRUCTION, INC., and KENNY CONSTRUCTION CO., <br><br> Defendants. | 19 C 3922 <br><br> Judge John Z. Lee |

**MEMORANDUM OPINION & ORDER**

Plaintiff Michael Young has brought this suit against Defendants Granite Construction, Inc. ("Granite") and Kenny Construction Company ("Kenny), alleging that Defendants failed to pay overtime wages to him and a putative class of employees in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq*. Defendants have filed a motion to compel Plaintiff to arbitrate his claims on an individual basis. For the reasons stated herein, Defendants' motion [19] is granted. This case is stayed pending the resolution of arbitration proceedings.

**Background**

Granite is a "full-service general contractor, construction management firm[,] and construction materials producer." Compl. ¶ 2, ECF No. 1. In January 2013, Kenny became a wholly owned subsidiary of Granite. *Id.* ¶ 3. Plaintiff worked for Defendants as a Field Construction/Commissioning Manager from March 2015 to December 2017. *Id.* ¶ 19.

During the period alleged in this suit, Plaintiff worked as an hourly employee, and Defendants set his schedule. *Id.* ¶¶ 41–42. If he worked fewer than 40 hours in a week, he would be paid only for the hours he actually worked. *Id.* ¶ 46. But when Plaintiff worked more than 40 hours, he alleges, he was not paid overtime. *Id.* ¶¶ 5–6, 54–61.

Plaintiff brought this lawsuit in July 2019, asserting claims under the FLSA and the New York Labor Law ("NYLL") on behalf of himself and a class of workers allegedly subjected to the same wage practices during the previous three years. *Id.* ¶¶ 27, 30. Defendants have moved to compel arbitration and to stay or dismiss this action pending the arbitration proceeding. In the alternative, Defendants ask the Court to strike Plaintiff's jury demand.

## **Legal Standard**

The Federal Arbitration Act ("FAA") mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

Courts are responsible for deciding whether an agreement to arbitrate exists before ordering arbitration. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741–42 (7th Cir. 2010). Once a court is satisfied that an agreement to arbitrate exists, the FAA instructs the court to stay the proceedings on issues subject to arbitration and

provides a mechanism for parties to request that the court compel arbitration pursuant to the agreement. 9 U.S.C. §§ 3–4; *see also Tinder*, 305 F.3d at 733.

A party opposing a motion to compel arbitration bears the burden of identifying a triable issue of fact as to the existence of the purported arbitration agreement. *Tinder*, 305 F.3d at 735. The opponent's evidentiary burden is akin to that of a party opposing summary judgment under Rule 56. *Id.* "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* The Court must believe the evidence of the party opposing arbitration and draw all justifiable inferences in its favor. *Id.* If the party opposing arbitration identifies a genuine issue of fact as to whether an arbitration agreement was formed, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see Tinder*, 305 F.3d at 735.

## Discussion

At the center of the parties' dispute is a form Plaintiff signed at the beginning of his employment entitled "Employee Dispute Resolution Program (EDRP) Agreement Form." Defs.' Mem. Supp. Mot. Compel Arbitration, Ex. 1, EDRP Agreement Form, ECF No. 20-1. In that form (the "EDRP Agreement"), dated March 23, 2015, Plaintiff agreed to the following procedure:

> Both the Company[1] and I agree that any dispute that may arise out of my employment must be settled in a manner that is fair to both of us.

---

[1] In the handbook provided along with this form (the "EDRP Handbook"), "Company" is defined as "Granite Construction Incorporated and its wholly owned subsidiary

3

> Both the Company and I agree that a consistent set of procedures will ensure fairness and promote timely resolution. Therefore, both the Company and I agree to use the methods and procedures contained in the ***Employee Dispute Resolution Program Handbook*** to identify and resolve any dispute that may arise out of my employment or the termination of my employment. The Employee Dispute Resolution Program includes neutral and binding arbitration as a final step, if necessary. As a result of this agreement, both the Company and I agree to waive any right to a jury trial.

*Id.* The EDRP Handbook, incorporated into the agreement, sets forth four steps (described as "options"): (1) The Open Door Policy; (2) The Conference; (3) The Mediation; and (4) The Arbitration. EDRP Handbook at 3–8.

Defendants argue that Plaintiff agreed to binding arbitration as a final step of the EDRP and, thus, this action must be stayed or dismissed pending arbitration of his claims on an individual basis. For his part, Plaintiff argues that, because arbitration is but one of several options set forth in the EDRP Handbook, it is not mandatory.

In determining whether to compel arbitration, the Court must first resolve whether a valid agreement to arbitrate exists. *Gupta v. Morgan Stanley Smith Barney, LLC*, ___ F.3d ___, No. 18-3584, 2019 WL 3886452, at *3 (7th Cir. Aug. 19, 2019).[2] If a valid agreement exists, the Court must then consider whether Plaintiff's

---

companies." Defs.' Mem. Supp. Mot. Compel Arbitration, Ex. 1, EDRP Handbook at 12, ECF No. 20-1. Plaintiff does not dispute that Kenny was a party to the agreement.

[2] Plaintiff argues that the existence of an agreement to arbitrate must be shown to a "clear and unmistakable" degree. *See* Pl.'s Resp. Opp. Mot. Compel Arbitration at 2–3, 6, ECF No. 27. But the "clear and unmistakable" standard applies to a "union's waiver of the rights of represented employees," not to "an individual's waiver of his own rights." *Hill v. Consultants in Pathology, S.C.*, 345 F. Supp. 3d 1011, 1018 (N.D. Ill. 2018) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80–81 (1998)). Here, ordinary contract principles apply.

claims fall within the scope of the agreement. *Id.* State common law of contract formation governs this analysis. *Id.*

The parties appear to agree that Illinois law applies to the contract-interpretation analysis, and the Court will follow their lead. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (applying the state's law cited by the parties in the absence of any argument that applying one state's law over another would affect the outcome). In Illinois, the analysis of contract formation begins "with the language of the contract itself. If the language unambiguously answers the question at issue, the inquiry is over." *Emergency Med. Care, Inc. v. Marion Mem'l Hosp.*, 94 F.3d 1059, 1060–61 (7th Cir. 1996).

The EDRP Agreement Plaintiff signed is unequivocal—the parties agreed to use the EDRP "to identify *and resolve* any dispute that may arise out of [Plaintiff's] employment or the termination of [Plaintiff's] employment," and acknowledged that the EDRP "includes neutral and binding arbitration as a final step, if necessary." EDRP Agreement Form (emphasis added). The parties further confirmed their understanding that litigation was unavailable by noting that they "agree[d] to waive any right to a jury trial." *Id.* This language leaves no room for dispute that the EDRP, including arbitration as a final step, is the exclusive dispute-resolution mechanism.

Still, the parties focus their energies on the language of the ERDP Handbook, which is referenced and incorporated in the EDRP Agreement. But Defendant has the better argument here. When the EDRP Handbook is considered as a whole, it

5

reflects the parties' intent to utilize arbitration to resolve employment-related disputes, if the first three steps of the EDRP are unsuccessful. *See Curia v. Nelson*, 587 F.3d 824, 829 (7th Cir. 2009) (explaining that, in Illinois "[a] contract is to be construed as a whole, viewing each part in light of the others" (internal quotation marks omitted)); *Markin v. Chebemma, Inc.*, 526 F. Supp. 2d 890, 893 (N.D. Ill. 2007) (same). For instance, in the background section, the Handbook explains that "[f]or those situations involving legally protected rights that, for whatever reason, cannot be resolved in-house, Granite has adopted a private, professional way *outside* the Company to settle them. This outside process will involve either mediation and / or arbitration led by the American Arbitration Association (AAA)." EDRP Handbook at 2. Similarly, in describing arbitration, the Handbook explains that "[i]f the dispute involves a legally protected right . . . and has not been resolved in Options One, Two or Three, you or the Company may request arbitration." *Id.* at 8. And although the Handbook acknowledges that employees need not proceed through the steps in order, it clearly envisions arbitration as the final step, noting that "the Program is designed with multiple steps to maximize the possibility of a resolution *prior to Option 4.*" *Id.* (emphasis added).

Additionally, the EDRP Handbook manifests the parties' intention to foreclose litigation as an avenue for resolving employment disputes. This understanding is first reflected in the description of the EDRP's purpose:

> Employee disputes can be time-consuming and very costly, particularly when they end up in lawsuits between the employee and the Company— especially in those cases involving a *legally protected right* (any claim or controversy that requires or allows one to resort to any court or other

>governmental dispute resolution forum between the employee and Granite arising from the employment relationship with Granite).

*Id.* at 2. And the Handbook ends with a similar admonishment: "[The EDRP] saves all of us the expense and emotional trauma of a long court battle." *Id.* at 16. Furthermore, the Handbook clarifies that if an employee subject to it files a lawsuit, "Granite will ask the court to dismiss the case and refer it to [the EDRP]." *Id.* at 14. And, throughout the EDRP Handbook, arbitration is discussed as a favorable alternative to litigation. *See id.* at 14 (describing how arbitration "differ[s] from a court trial"), 15 (explaining that in arbitration "it's possible for you to recover anything you might seek through the court system" and that the EDRP "applies to relief you might seek personally through the Courts for a workplace dispute").

Two recent cases involving similar language are instructive—*Shalda v. SSC Waynesville Operating Company, LLC*, No. 1:18-cv-00127-MR-WCM, 2019 WL 189836, at *1–2 (W.D.N.C. Jan. 4, 2019), and *Crawley v. Macy's Retail Holdings, Inc.*, No. 15 CIV. 2228, 2017 WL 2297018, at *2, 5 (S.D.N.Y. May 25, 2017). In both cases, the plaintiffs had signed dispute-resolution agreements setting forth four-step procedures similar to the one at issue here. In *Shalda*, as in this case, the parties agreed to "resolve all claims, controversies or disputes . . . exclusively through the Employment Dispute Resolution Program," and acknowledged that the "last step of the EDR Program is final and binding arbitration." 2019 WL 189836, at *1. The court concluded that, based on this agreement, "the parties expressly agreed to arbitrate all claims arising from the Plaintiff's employment or termination if the first steps of the Employment Dispute Resolution Program did not resolve the issue." *Id.*

7

at *2. Similarly, in *Crawley*, the court held that, by declining to sign a form opting out of arbitration (the fourth step of the dispute-resolution program), the plaintiff had "agreed to follow" it. 2017 WL 2297018 at *5.

For his part, Plaintiff isolates examples of equivocal language in the EDRP Handbook, arguing that, while arbitration may be an available dispute resolution mechanism, it is not required. For instance, Plaintiff points to the description of the four steps of the EDRP as "options," as well as the EDRP Handbook's explanation that employees need not follow the four steps in their exact order. *See* EDRP Handbook at 14 ("[A] number of factors can affect the order of the steps you wish to utilize . . . ."). Plaintiff also notes that arbitration is described as something employees "may" request, as opposed to something they "must" utilize. *See id.* at 8 ("If the dispute involves a legally protected right . . . and has not been resolved in Options One, Two or Three, you or the Company may request arbitration.").

What this argument fails to recognize, however, is that Plaintiff unequivocally agreed to "use the methods and procedures contained in the [EDRP Handbook] to identify and resolve any dispute that may arise out of [his] employment or the termination of [his] employment." EDRP Agreement Form. He also acknowledged that the EDRP "includes neutral and binding arbitration as a final step, if necessary." *Id.* Thus, while Defendants' employees may choose an option in the EDRP other than arbitration to resolve their employment-related disputes, they are limited to the four choices, and litigation is not among them.

8

Plaintiff's reliance on *Niebrugge v. King's Medical Group, Inc.*, No. 08-1018, 2008 WL 2980034, at *2 (C.D. Ill. 2008), likewise is unavailing. There, the plaintiff had been subject to an employee handbook providing that "any regular employee may use the arbitration procedure after exhausting the complaint procedure." *Id.* (emphasis omitted). But, as the court was careful to note, "[n]o language . . . indicate[d] that arbitration [was] binding or mandatory, much less inform[ed] an employee that he or she [was] waiving any rights." *Id.* The same is not true here. The EDRP Agreement and Handbook describe arbitration as binding; the Agreement clearly specifies that employees are limited to the dispute resolution avenues provided in the handbook; and the Agreement further explains that the parties are waiving their right to a jury trial.

Similarly, the Court rejects Plaintiff's contention that use of the EDRP is a mere "condition precedent" to litigation. Pl.'s Resp. Opp. Mot. Compel Arbitration at 7. Nothing about the EDRP Agreement or Handbook indicates that employees may litigate claims once they have exhausted internal dispute-resolution procedures. Rather, both set forth arbitration as the "final step, if necessary," and clearly explain that arbitration will be "final" and "binding." EDRP Agreement Form; EDRP Handbook at 5, 7–10; *see also* EDRP Handbook at 14 ("With arbitration, the decision is final; except in rare circumstances, it may not be reversed by subsequent proceedings.").

For these reasons, the Court concludes that the parties have entered into a binding agreement to arbitrate their dispute. And Plaintiff does not contest the fact

9

that, if an agreement exists, his claims are encompassed within it. Nor could he, as the EDRP Agreement plainly applies to "any dispute that may arise out of [Plaintiff's] employment or the termination of [his] employment." EDRP Agreement Form. Thus, the Court orders the parties to pursue this dispute in arbitration.

Furthermore, the Court agrees with Defendant that Plaintiff must arbitrate his claims on an individual basis and cannot pursue class-wide arbitration. The Supreme Court recently has explained that class-wide arbitration cannot be compelled where an arbitration agreement is silent or even ambiguous as to the arbitrability of class-wide or collective claims. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418–19 (2019); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Here, Plaintiff does not point to any language in the EDRP Agreement or Handbook that provides for the arbitration of class-wide claims.

As a final matter, Defendants ask the Court to dismiss this action rather than staying it pending arbitration proceedings. But the FAA is clear: "[U]pon being satisfied that the issue involved in [the pending] suit or proceeding is referable to arbitration," courts "shall... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Given this statutory language, the Court declines to follow cases holding that a judge has the discretion to dismiss, rather than stay, an action pending arbitration. *See Soucy v. Capital Mgmt. Servs., L.P.*, No. 14-cv-5935, 2015 WL 404632, at \*6 (N.D. Ill. Jan. 29,

2015); *Chambers v. Aviva Life & Annuity Co.*, No. 12-cv-9589, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) (collecting authorities).[3]

## Conclusion

For the foregoing reasons, Defendants' motion is granted. This action shall be stayed during the pendency of arbitration proceedings. The parties are ordered to file a joint status report within 14 days after the conclusion of such proceedings.

**IT IS SO ORDERED.**     ENTERED: 9/11/19

_____
**JOHN Z. LEE**
**United States District Judge**

---

[3] Because the Court has concluded that Plaintiff's claims are arbitrable, the Court will not address Defendants' alternative request to strike Plaintiff's jury demand.